**Sallie B. HOLLOWAY, Plaintiff,**

v.

**The UNITED STATES of America, Defendant.**

No. 03–1821C.

United States Court of Federal Claims.

April 6, 2004.

J. Byron Holcomb, Attorney at Law, Bainbridge Island, Washington, for the plaintiff.

Richard P. Schroeder, Commercial Litigation Branch, Civil Division, United States Department of Justice, for the defendant.

## OPINION AND ORDER

BLOCK, Judge.

This action is brought by an officer in the United States Naval Reserves ("USNR") who claims that the United States Navy ("Navy") unlawfully discharged her from active duty military service. Plaintiff, Captain Sallie B. Holloway, seeks a correction of her military records so that she may retire as an active duty Naval officer with the appropriate backpay, allowances, and benefits. Before this court is defendant's motion to dismiss pled in the alternative pursuant to either Rule 12(b)(1) or Rule 12(b)(6) of the Rules of the Court of Federal Claims ("RCFC"). As will be fully explained below, because this court is without jurisdiction to hear the claim, the court has no alternative but to grant defendant's RCFC 12(b)(1) motion.

## I. The Standard of Review and Applicable Law

The peculiar facts of this case mandate that the court center on the proffered RCFC 12(b)(1) motion [1] simply because there exists a serious question, as we shall see, of whether plaintiff's counsel was even aware of two procedural statutes that condition the waiver by the United States of its sovereign immunity under this court's jurisdictional statute—the Tucker Act.[2] In any event, failure to abide by these procedural requirements would render the present action stale. It is well accepted that the United States "is immune from suit save as it consents to be sued ... and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). The government, furthermore, must unequivocally express its consent in a clear statement waiving sovereign immunity. *United States v. White Mt. Apache Tribe,* 537 U.S. 465, 472, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003).

---

1. A party can move to dismiss a claim under RCFC 12(b)(1) when the court lacks subject matter jurisdiction. RCFC 12(b)(1). Subject matter jurisdiction addresses the court's "general power to adjudicate in specific areas of substantive law." *Palmer v. United States,* 168 F.3d 1310, 1313 (Fed.Cir.1999). This court, furthermore, *shall* dismiss an action "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter." RCFC 12(h)(3). The court is "obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor." *Henke v. United States,* 60 F.3d 795, 797 (Fed.Cir.1995). A plaintiff, however, as the non-moving party bears the burden of establishing jurisdiction by preponderant evidence. *United States v. Hays,* 515 U.S. 737, 743, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995) (citing *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135; *Warth v. Seldin,* 422 U.S. 490, 518, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)); *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed.Cir.1988).

2. The Tucker Act, 28 U.S.C. § 1491(a)(1), in part provides that:

> [t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

The Tucker Act operates as a waiver of sovereign immunity for non-tort suits against the United States premised on the Constitution, a statute or regulation, or either an express or implied contract with the United States. *See* 28 U.S.C. § 1491(a)(1); *United States v. Testan,* 424 U.S. 392, 397, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). Nevertheless, the Tucker Act does not create a substantive right enforceable against the United States for money damages; it merely confers jurisdiction on this court whenever that substantive right exists. *Testan,* 424 U.S. at 398, 96 S.Ct. 948 (*citing Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 372 F.2d 1002, 1007–1009 (1967)). Consequently, a plaintiff must premise its claim on a separate statute or regulation permitting recovery. *Id.; Rinner v. United States,* 50 Fed.Cl. 333, 335 (2001).

■ The first procedural condition on the Tucker Act waiver is its six year statute of limitations. 28 U.S.C. § 2501.[3] The statute of limitations operates as an express limitation on the Tucker Act's waiver of sovereign immunity, and may not be waived by either the court or the parties. *Forman v. United States,* 329 F.3d 837, 841–42 (Fed.Cir.2003) (*citing Soriano v. United States,* 352 U.S. 270, 273, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957); *Hart v. United States,* 910 F.2d 815, 817 (Fed.Cir.1990)); *Alder Terrace, Inc. v. United States,* 161 F.3d 1372, 1377 (Fed.Cir.1998). This six-year time limit is thus jurisdictional and filing within the six-year period is "a condition of the waiver of sovereign immunity in the Tucker Act ...." *Caguas Cent. Fed. Sav. Bank v. United States,* 215 F.3d 1304, 1310 (Fed.Cir.2000). In other words, § 2501 is an essential element a plaintiff must satisfy to avail himself of the Tucker Act's waiver of sovereign immunity. *S. Cal. Fed. Sav. & Loan v. United States,* 52 Fed. Cl. 444, 452 (2002).

■ The decisive factor in determining when a limitations period runs is when a claim first accrues. Accrual occurs when all events that fix government liability and entitle the claimant to institute an action arise. *See Alder Terrace, Inc.,* 161 F.3d at 1377 (*citing Kinsey v. United States,* 852 F.2d 556, 557 (Fed.Cir.1988); *Hopland Band of Pomo Indians v. United States,* 855 F.2d 1573, 1577 (Fed.Cir.1988)). This is in contradistinction to some hypothetical later time when "a claimant becomes certain he can prevail on the merits." *Cristina Inv. Corp. v. United States,* 40 Fed.Cl. 571 (1998) (*citing State of Alaska v. United States,* 32 Fed.Cl. 689, 698 (1995)). The Federal Circuit has held that in military pay cases—and the parties in this case are in agreement as to the law here [4]—the cause of action accrues, and statute of limitations starts to run, on the date of discharge from the military. *See Martinez v. United States,* 333 F.3d 1295, 1312 (Fed.Cir. 2003) ("[I]t is well-settled that the statute of limitations for Tucker Act claims is not tolled by the claimant's exercise of his rights to seek permissive administrative review of his claim.").

■ The second procedural condition to Tucker Act claims brought in the Court of Federal Claims is 28 U.S.C. § 1500, which precludes the court from exercising jurisdiction over "any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States ...." By its terms, § 1500 prohibits filing and prosecuting the same claims against the United States in two courts at the same time. 28 U.S.C. § 1500. This proscription, furthermore, coincides with the fundamental principle that a court must determine its jurisdiction at the time a plaintiff files the complaint. *Keene Corp. v. United States,* 508 U.S. 200, 207, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993) (citations omitted); *Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 830, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989). The Court of Federal Claims, therefore, may not exercise its jurisdiction over a claim if, at the time of filing, a claim is pending in any other court based on

---

**3.** 28 U.S.C. § 2501 reads: "Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six-years after such claim first accrues."

**4.** At oral argument, both parties agreed *Martinez* dictated that plaintiff's claim accrued on July 1, 1997, the date of her discharge from active duty. *See* Tr. of Oral Arg. at 7:13–16; 8:12–17.

the same operative facts and requesting essentially the same relief. *Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545, 1550–52 (Fed.Cir.1994); *Bailey v. United States*, 46 Fed.Cl. 187, 195 (2000).

In this case, plaintiff requests this court to order the Navy to correct her military records so that she may retire as an active duty Naval officer with attendant backpay, allowances, and benefits. The relief is premised on two other statutes, 10 U.S.C. § 1552 [5] and 37 U.S.C. § 204,[6] which plaintiff argues entitles her to a correction of her military service records and an active duty retirement under the Navy's Temporary Early Retirement Authority ("TERA").[7] Pl.'s Compl. at 2, ¶ 5; at 4, ¶ 8. The relief here sought clearly falls within the ambit of the Tucker Act. *See Holley v. United States*, 124 F.3d 1462, 1466 (Fed.Cir.1997) ("It is no longer subject to debate whether a Tucker Act claim may be stated for military back pay and ancillary relief. The Court of Federal Claims, like the Court of Claims before it, has jurisdiction of such claims."). The nature of plaintiff's prayers for relief, therefore, makes this court the appropriate forum to adjudicate her claims.

The primary issue here is whether the action before the court is time-barred. The complaint in this action was filed on August 4, 2003, more than six years after the claim accrued, which both parties agree was on or about July 1, 1997. However, that is not the end of the story. This is where 28 U.S.C. § 1500 and various proceedings filed in diverse forums come into play.

5. 10 U.S.C. § 1552, CORRECTION OF MILITARY RECORDS, empowers the Secretaries of the armed services to correct the service records according to procedures established by the Secretaries and "acting through boards of civilians of the executive part of that military department."

6. 37 U.S.C. § 204, Entitlement, BASIC PAY AND ALLOWANCES OF THE UNIFORMED SERVICES, outlines the financial entitlements of active duty and reserve personnel of the uniformed services.

7. Congress codified TERA in the National Defense Authorization Act for Fiscal Years 1992 and 1993 as Pub.L. 102–484, § 4403(a), 106 Stat.

## II. Background

The facts of this case derive from the parties' moving papers. Plaintiff voluntarily entered active duty from reserve status on May 22, 1987. Pl.'s Compl. at 2, ¶ 4; Ex. A to Pl.'s Compl, § 12(a). On July 1, 1997, the Navy honorably discharged plaintiff from active duty with the rank of Commander. Plaintiff, thereafter, returned to the USNR. *Id.;* Ex. A to Pl.'s Compl. §§ 4(a)-(b), and 12(b). Prior to this ten-year period of active duty service, plaintiff served a separate five-year active duty term. Ex. A to Pl.'s Compl. § 12(d). As a result of this prior service, plaintiff totaled just over 15 years of active duty service at the time of her July 1, 1997 discharge. *See* Ex. A to Pl.'s Compl. § 12(c) and (d). Plaintiff received $87,536.68 in separation pay and allowances upon her discharge from active duty. *Id.* § 18.

On February 19, 1997, approximately five months prior to her discharge from her second period of active duty, plaintiff requested early retirement under TERA. Pl.'s Compl. at 2, ¶ 5. On March 24, 1997, Vice Admiral D.T. Oliver, Chief of Personnel for the Navy, notified plaintiff by letter that the Navy denied her request for an active duty retirement under TERA because of her status as a Canvasser Recruiter ("CANREC"). Def.'s App. to Mot. to Dismiss at 1. Admiral Oliver noted that "TERA was not a legal entitlement," but a "specifically tailored force shaping tool, offered sparingly where required to drawdown the active duty force." *Id.* Admiral Oliver also stated that "[CANREC] officers with less than 18 years of active service have never been eligible for TERA" because the Navy instituted a different set of "inven-

2315, 2702, as amended by Pub.L. 104–106, § 1504(c)(3), 110 Stat. 514 (10 U.S.C. 1293 note) (1996). TERA provides the Secretary of Defense with a "temporary additional force management tool with which to effect the drawdown of military forces during the active force drawdown period." Pub.L. 102–484, § 4403(a), 106 Stat. 2315, 2702, as amended by Pub.L. 104–106, § 1504(c)(3), 110 Stat. 514 (10 U.S.C. 1293 note) (1996). TERA empowers the secretaries of the separate services during a period of active force drawdown to allow officers with 15 years of active duty service to retire with the same pay and benefits as an officer with 20 years of active duty service. *Id.*

tory management procedures" for CANREC officers. *Id.*

After her July 1, 1997 discharge, plaintiff continued her career in the USNR. Pl.'s Compl. at 2, ¶ 4. Plaintiff, however, did not relent in her pursuit of an active duty retirement and applied to the Board of Navy Corrections of Navy Records ("BCNR") for a review of her TERA application and the Navy's March 24, 1997 decision. *Id.* at 3, ¶ 5. On October 26, 1999, a three-member panel of the BCNR reviewed plaintiff's TERA application and found "the evidence submitted was insufficient to establish the existence of probable material error or injustice." Ex. B to Pl.'s Compl.

On March 21, 2000, a complaint was filed in the United States District Court for the Northern District of California seeking a correction of plaintiff's military records and an award of backpay and allowances. *See* Def.'s App. to Def.'s Memo. of Law in Opp. to Pl.'s Mot. to Stay Def.'s Mot. to Dismiss at 4, *Holloway v. Danzig,* Case No. CV–00–00981–SBA. On October 19, 2000, the District Court dismissed the claim for lack of jurisdiction, explicitly noting that plaintiff had an adequate remedy in the Court of Federal Claims.[8] *Id.* at 23 (ORDER, Armstrong, J., U.S. District Court for the Northern District of California, October 19, 2000). On October 31, 2000, Mr. J. Byron Holcomb, plaintiff's counsel in that case and current counsel, filed a "Motion to Amend the District Court's Order." On November 22, 2000, plaintiff's counsel submitted an identical "Motion to Amend," as well as an alternative "Motion to Transfer Plaintiff's Case to the Court of Federal Claims."[9] On January 31, 2001, the District Court denied these motions and reiterated that plaintiff's proper forum for relief was in the Court of Federal Claims. *See id.*

at 37–38. Judge Brown clearly stated that "plaintiff can refile in the [Court of Federal Claims], without penalty, should she choose to do so." *Id.* at 38.

Instead of heeding this advice and filing in the Court of Federal Claims, plaintiff's counsel chose to appeal the District Court's dismissal to the United States Court of Appeals for the Ninth Circuit. *See id.* at 29, *Holloway v. England,* Case No. 01–15616. On October 11, 2002, the Ninth Circuit affirmed the District Court's dismissal. *See Holloway v. England,* 50 Fed.Appx. 836 (9th Cir.2002) (table), *cert. denied sub nom., Holloway v. Johnson,* —— U.S. ——, 123 S.Ct. 2653, 156 L.Ed.2d 658 (2003); Def.'s App. to Def.'s Memo. of Law in Opp. to Pl.'s Mot. to Stay Def.'s Mot. to Dismiss at 32–33. Precisely as the District Court did before, the Ninth Circuit clearly noted that "[plaintiff] has an adequate remedy in the Court of Federal Claims, assuming she can prevail on the merits . . . [T]he Court of Federal Claims can grant the full measure of any relief warranted in this instance." *Id.* at 838–39; Def.'s App. to Def.'s Memo. of Law in Opp. to Pl.'s Mot. to Stay Def.'s Mot. to Dismiss at 31.

On December 3, 2002, plaintiff's counsel simultaneously filed in the Court of Federal Claims both a complaint for money damages and a motion to stay this very proceeding. *See Holloway v. United States,* Case No. 02–1773C. The basis for the motion to stay was the assertion that the Ninth Circuit's decision for an *en banc* review of its earlier *Holloway v. England* decision was pending. Pl.'s Resp. to Def.'s Mot. to Dismiss at 2; Pl.'s Mot. to Suspend Proceedings and Decl. at 1–2, (Dec. 3, 2002). The December 3, 2002 complaint in most respects mirrored the complaint filed in the District Court. *See* Def.'s

---

8. In her order, Judge Saundra B. Armstrong found:

> Plaintiff alleges that she actually is challenging the constitutionality of the naval regulations and defendant's authority under federal statute. However, her claim essentially is one for back pay and retirement benefits, that is, money damages. Such claims must be brought in the [Court of Federal Claims], not here.

Def.'s App. to Def.'s Memo. of Law in Opp. to Pl.'s Mot. to Stay Def.'s Mot. to Dismiss at 23 (ORDER, Armstrong, J., U.S. District Court for

the Northern District of California, October 19, 2000).

9. Plaintiff's counsel also requested oral argument on this motion so that he could, "ENLIGHTEN [the District Court] AS TO WHY [the District Court] IS SO CLEARLY IN ERROR." Def.'s App. to Def.'s Memo. of Law in Opp. to Pl.'s Mot. to Stay Def.'s Mot. to Dismiss at 35. (ORDER, Armstrong, J., U.S. District Court for the Northern District of California, January 31, 2001 (citing Pl.'s Mot. to Amend at 5:12–13 (original in capitals))).

App. to Def.'s Memo. of Law in Opp. to Pl.'s Mot. to Stay Def.'s Mot. to Dismiss at 39–44.

On December 13, 2002, Judge Hodges notified the parties in an order that the Court of Federal Claims "is not permitted to consider law suits that have been filed in other courts" in light of 28 U.S.C. § 1500. Ex. A to Pl.'s Resp. to Def.'s Opp. to Pl.'s Mot. to Stay Def.'s Mot. to Dismiss. The court directed plaintiff's counsel to indicate how he wanted to proceed on his client's claim. *Id.* On January 24, 2003, plaintiff's counsel filed a motion to voluntarily dismiss without prejudice the December 3, 2002 complaint. Judge Hodges granted this request in an order dated January 27, 2003. Def.'s App. to Def.'s Memo. of Law in Opp. to Pl.'s Mot. to Stay Def.'s Mot. to Dismiss at 46; Ex. B to Pl.'s Resp. to Def.'s Opp. to Pl.'s Mot. to Stay Def.'s Mot. to Dismiss.

Undeterred by the Ninth Circuit's adverse October 11, 2002 decision on his appeal, as well as its apparent denial of his request for an *en banc* review of that decision,[10] plaintiff's counsel filed a petition for a writ of *certiorari* with the United States Supreme Court seeking a review and reversal of the adverse Ninth Circuit's appellate decision. *Holloway v. England,* 50 Fed.Appx. 836 (9th Cir.2002) (table) *petition for cert. filed,* 71 U.S.L.W. 3724 (April 30, 2003) (No. 02–1612). On June 27, 2003, the Supreme Court denied this petition. —— U.S. ——, 123 S.Ct. 2653, 156 L.Ed.2d 658 (2003); Def.'s App. to Def.'s Memo. of Law in Opp. to Pl.'s Mot. to Stay Def.'s Mot. to Dismiss at 33.

On August 4, 2003, the present action was filed in this court. The complaint avers the same material facts and requests for relief as the complaints previously filed in both this court and the District Court for the Northern District of California. On November 13, 2003, defendant filed the present motion to dismiss. Instead of responding to the motion, however, plaintiff's counsel filed on December 12, 2003, a "Motion to Stay Motion of Defendant to Dismiss and Companion Relief" and requested the court:

(1) stay defendant's Motion to Dismiss until further Order of the Court; and,

(2) require defendant to file the administrative record, including proceedings before the BCNR; and,

(3) merge No. 02–1773C of this Court (*i.e.,* Judge Hodges' case) with the [August 4, 2003 filing]; and,

(4) allow plaintiff to file her Motion for Judgment on the Administrative Record before or concurrent with the defendant's Motion to Dismiss; and,

(5) schedule a telephone conference to determine the sequence of Motions, dates of response, and other matters; and,

(6) grant an extension of time of twenty days to plaintiff from date of decision on plaintiff's Motion to Stay to respond to defendant's Motions if the above Motions are denied; and,

(7) schedule oral argument before the Court on the Motions allowed; and,

(8) such other relief as the Court deems appropriate under the circumstances.

Pl.'s Mot. to Stay Mot. of Def.'s to Dismiss and Companion Relief at 1–2, ¶¶ 1–8.

On February 6, 2004, this court scheduled a February 10, 2004 teleconference to address the pending motion. During that teleconference the court rejected plaintiff's motion to stay, directed plaintiff's counsel to file a response to the jurisdictional issue raised by defendant's motion to dismiss, and scheduled oral argument on March 4, 2004 to consider the jurisdictional issue.

### III. Discussion

■ Defendant's argument is simple: the express terms of this court's statute of limitations makes plaintiff's August 4, 2003 complaint time-barred. The contention is that plaintiff's claim accrued on July 1, 1997, the day of her discharge from active duty military service. Def.'s Mot. to Dismiss at 5; Tr. of Oral Arg. at 7:13–16, 22–25; 8:1–2. Plaintiff's application to the BCNR, furthermore, did not toll the statute of limitations. *Id.* (*citing Martinez,* 333 F.3d at 1312). In the absence of any recognizable judicial extension or delay of the statute of limitations, defendant argues this court lacks jurisdiction

---

10. The record does not reveal the date of the denial of the request for an *en banc* decision.

simply because the complaint was not timely filed.

It is highly significant that plaintiff's counsel does not dispute that he filed his client's complaint after the statute of limitations expired in this case. At oral argument, plaintiff's counsel explained that this delay resulted from his late receipt of the Supreme Court's notice denying his writ for *certiorari*. *See* Tr. of Oral Arg. at 18:5–6. He did not offer any argument explaining why his choice of forum tolled the statute of limitations in this case.

Instead, plaintiff's counsel argues that the August 4, 2003 date of the complaint was timely because it relates to the first complaint filed in this court on December 3, 2002. *See* Pl.'s Resp. to Def.'s Mot. to Dismiss at 3, n. 4; Tr. of Oral Arg. at 12:9–17. Although the initial complaint was voluntarily dismissed, plaintiff's counsel contends he did so with the assumption that he could later file an action in this court without running afoul of the limitations period. *See* Tr. of Oral Arg. at 12:18–25; 13:9–12 ("[I]'ve practiced in the Court of Claims since 1975 .... When I filed this I thought it was still the practice of the court to allow suspensions, but if something has changed during this whole time, and I don't know what it is ...."). The practical effect of this argument is an admission that the complaint was not timely filed, but that the tardiness was somehow excusable.

To reiterate the essential facts: the BCNR denied plaintiff's request for an active duty retirement on March 24, 1997. The Navy thereafter discharged her from active duty on July 1, 1997. Therefore, pursuant to *Martinez* and § 2501, plaintiff's last date to file a claim with this court was July 1, 2003.[11] Plaintiff's counsel first filed a complaint in this court on December 3, 2002. On January 27, 2003, however, counsel voluntarily dismissed it after Judge Hodges informed him that this court is "not permitted to consider law suits that have been filed in other Federal courts." Ex. B, ("ORDER," Hodges, J., U.S. Court of Federal Claims, December 13, 2002), Pl.'s Resp, to Def.'s Mot to Dismiss. Plaintiff's counsel did not file the present complaint until August 4, 2003. Clearly, unless some legal justification exists, the present claim in this court is time-barred.[12]

The kernel of plaintiff's argument is that the present complaint "merged" with the voluntarily dismissed December 3, 2002 complaint. In other words, the present filing for limitations period purposes "relates back" to the initial filing and the court is asked to recognize as *nunc pro tunc* the complaint filed on August 4, 2003. The argument is that

11. The court arrives at this date by applying the counting rules stated in RCFC 6(a), as well as the statutory period listed in 28 U.S.C. § 2501, to plaintiff's July 1, 1997 date of discharge.

12. One possible solution is application of the doctrine of equitable tolling. Whether this creature of equity even applies to the six-year Tucker Act limitations period enunciated in 28 U.S.C. § 2501 is perhaps doubtful given that the limitations period here, as noted above, goes to jurisdiction—it is a condition to the waiver of sovereign immunity. *See Bailey v. West*, 160 F.3d 1360, 1365 (Fed.Cir.1998) (*citing Irwin v. Dept. of Veterans Affairs*, 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990)) (language and construction of statute specifying time period for appealing decisions of Board of Veterans' Appeals falls within rebuttable presumption in favor of equitable tolling). Another reason is that the very language of § 2501 itself indicates a contrary congressional intent to allow tolling. Section 2501 contains explicit exceptions to its basic time limits, and those specific exceptions simply do not include a provision for equitable tolling. *See United States v. Brockamp*, 519 U.S. 347, 351–52, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997) (declining to apply equitable tolling to the statute of limitations in a tax statute, 26 U.S.C. § 6511, because Congress "sets forth limitations in a highly detailed technical manner, that linguistically speaking, cannot easily be read as containing implicit exceptions"). But all this is academic because plaintiff's counsel himself rejected application of the doctrine (counsel refers to it as "equitable extension"). Indeed, plaintiff's counsel characterized the government's preemptive attack of the argument in its initial brief as being *"totally misplaced (and meant to mislead as far as that goes)."* Pl.'s Resp. to Def.'s Mot. to Dismiss at 7 (emphasis added). Although hyperbole, this rejection constitutes waiver. *See, e.g. XTRA Lease, Inc. v. United States*, 50 Fed.Cl. 612, 617 n. 9 (2001) (parties waive arguments when not raised in briefs or at oral argument); *McMillan v. Secretary of Health and Human Services*, 26 Cl.Ct. 357 (1992) (party waived argument against award of special fees and costs when it failed to file a response to a fee petition that raised any argument or objection to the special master's award of attorneys' fees and costs).

the December 3, 2002 filing in this court not only complied with 28 U.S.C. § 2501, but preserved plaintiff's right to prosecute her claim at the final conclusion of the Northern District of California case. *See* Pl.'s Resp. to Def.'s Mot. to Dismiss at 3, n. 4 ("The purpose of this filing is and was to protect [Plaintiff] from a motion to dismiss ... for failure to comply with the statute of limitations ....").

Here is where 28 U.S.C. § 1500 comes into play. The hard fact is that because the Ninth Circuit proceeding was pending when the December 3, 2002 complaint was filed, this court necessarily was divested of jurisdiction at that time. Simply put, the law views the initial complaint filed in this court as a nullity. And by implication this means that the present complaint cannot "relate back" to something that *de jure* never existed. Furthermore the effect of a voluntary dismissal is much the same. When an action is dismissed it is as if it never existed. *See Bonneville Assoc., Ltd. P'ship v. Barram,* 165 F.3d 1360, 1364 (Fed.Cir.1999) ("The rule in the federal courts is that '[t]he effect of a voluntary dismissal without prejudice pursuant to Rule 41(a) 'is to render the proceedings a nullity and leave the parties as if the action had never been brought.' '" (citations omitted)); *Frazer v. United States,* 49 Fed. Cl. 734, 736 (2001) (where earlier case no longer pending, later time-barred action "stands alone" and does not "relate back" to earlier suit).

The law of this circuit addressing pending claims in the context of 28 U.S.C. § 1500 is clear: filing the same action in *any* court prior to, or simultaneously with, filing in the Court of Federal Claims divests this court of jurisdiction over that matter. *Hardwick Bros. Co. II v. United States,* 72 F.3d 883, 886 (Fed.Cir.1995); *Loveladies Harbor,* 27 F.3d at 1548; *Breneman v. United States,* 57 Fed.Cl. 571, 576–77 (2003) (*citing Spodek v. United States,* 44 Fed.Cl. 32, 41 (1999)). Determining whether § 1500 precludes this court from considering the present claim involves a two-part test. This court must ascertain whether at the time the complaint was filed in this court on December 3, 2002, there was (1) "pending in any other court any

suit or process against the United States ...." 28 U.S.C. § 1500; *Loveladies Harbor, Inc.,* 27 F.3d at 1550; *Breneman,* 57 Fed.Cl. at 575, 577; *Vaizburd v. United States,* 46 Fed.Cl. 309, 311 (2000), (2) based on the "same operative facts" seeking the same or similar relief. *Loveladies Harbor,* 27 F.3d at 1554.

Although the record does not specify the exact date, it is unequivocally clear that at the time the first complaint was filed in this court, a decision from the Ninth Circuit was pending regarding a request for an *en banc* rehearing of its denial of plaintiff's appeal from the District Court. *See* Pl.'s Mot. to Suspend Proceedings and Decl. at 1–2 (filed December 3, 2002). This is something plaintiff's counsel attested to in a sworn declaration: "Holloway has petitioned the 9th Circuit for rehearing en banc, and that Petition is pending as of last week." *Id.* There is no question that plaintiff's request for an *en banc* rehearing with the Ninth Circuit qualifies as "pending" under § 1500. *See Gargoyles, Inc. v. United States,* 45 Fed.Cl. 139, 143 (1999) (citations omitted) (plain meaning of the word "pending" includes actions on appeal); *Hamilton v. Sec'y of the Dept. of Health and Human Servs.,* 28 Fed.Cl. 315, 318 (1993) (court's interpretation of "pending" under Vaccine Act—"awaiting action"— is "in consonance with" the Federal Circuit's § 1500 jurisprudence). *See also UNR Industries, Inc. v. United States,* 962 F.2d 1013, 1024 (Fed.Cir.1992) (petition for writ of *certiorari* is a "pending ... suit or process" within the meaning of 28 U.S.C. § 1500).

Furthermore, the December 3, 2002 complaint involved the same operative facts and requested relief as did the underlying District Court claim ultimately appealed to the Ninth Circuit. Factually, both complaints arose from plaintiff's quest for an active duty retirement from the Navy and her ultimate failure to obtain it. The actual written documents themselves contain no material variations, and both allege the Navy acted arbitrarily and capriciously when it denied plaintiff an active duty retirement under TERA.

The matter before the Ninth Circuit and the December 3, 2002 complaint involved not

only the same operative facts, but also the same requested relief. In each action, plaintiff asked for a correction of her military records making her eligible for an award of active duty backpay and retirement allowances. As a result, the plain language of § 1500 combined with the Federal Circuit's relevant precedents divested this court of jurisdiction to hear the December 3, 2002 complaint. *See Hardwick Bros. Co. II*, 72 F.3d at 886; *UNR Industries, Inc.*, 962 F.2d at 1021 ("By the plain language of section 1500, if the same claim is pending in another court when the plaintiff files his complaint in the Claims Court, *there is no jurisdiction, period*, even if the conflicting claim is no longer pending when a motion to dismiss is brought or considered by the court." (emphasis added)).

In defense, plaintiff's counsel boldly maintains that *Conn. Dept. of Children & Youth Servs.*, 16 Cl.Ct. 102 (1989), and *Keene Corp., et al. v. United States*, 12 Cl.Ct. 197 (1987) ("*Keene I*"), supports his *nunc pro tunc* argument. Pl.'s Resp. to Def.'s Mot. to Dismiss at 5–7. The court simply cannot agree.

First, basic research should have disclosed to counsel that *Keene I* is no longer good law. It is instructive to review the case history to demonstrate that this is no recent development. *Keene I*, decided in 1987, involved seven different individual corporations seeking indemnification from the government for amounts the companies owed under individual suits related to asbestos exposure. *Keene Corp.*, 12 Cl.Ct. at 197. In her opinion, Judge Nettescheim (now Judge Miller), considered the government's motion to dismiss one of the companies pursuant to § 1500. The government filed its motion to dismiss due to the company's then-ongoing suits involving individual plaintiffs in other courts filed prior to the company's action before the Claims Court. *Id.* at 199. Judge Nettescheim found § 1500 precluded this court's jurisdiction, yet allowed the company 60 days to try and dismiss its earlier-filed cases so as to preserve the court's jurisdiction. *Id.* at 212.

After Judge Nettescheim rendered her decision, the government moved for summary judgment against the remaining *Keene* plaintiffs on the grounds that the court lacked jurisdiction due to § 1500. The Claims Court granted the government's motion to dismiss in part, and found error in the earlier decision to allow the company time to dismiss its prior cases to preserve Claims Court jurisdiction. *See Keene Corp. v. United States*, 17 Cl.Ct. 146, 155 (1989) ("*Keene II*") ("Therefore, a plaintiff cannot cure a want of jurisdiction in the Claims Court by voluntarily or involuntarily dismissing its parallel action, or even by suffering a court-ordered termination on the merits. This overarching principle was not acknowledged in the earlier-filed *Keene Corp.* order, in which this court indicated that circumstances might justify allowing a plaintiff to withdraw an earlier-filed action to permit the Claims Court action to proceed."). The remaining plaintiffs appealed to the Federal Circuit.

In *UNR Industries, Inc. v. United States*, 911 F.2d 654 (Fed.Cir.1990) ("*UNR I*"), the Federal Circuit reversed *Keene II*, holding that "because the earlier-filed district court cases were dismissed before the claims court entertained and acted on a § 1500 motion to dismiss, § 1500 did not bar the claims court jurisdiction, even though the dismissal could have occurred after the filing of the claims court action." This was not the end of the matter for that same year the Circuit vacated *UNR I* and granted an *en banc* rehearing. *UNR Industries, Inc. v. United States*, 926 F.2d 1109 (Fed.Cir.1990) ("*UNR II*").

In *UNR Industries, Inc. v. United States*, 962 F.2d 1013 (Fed.Cir.1992) ("*UNR III*"), the Federal Circuit revisited *Keene II* and affirmed the judgment of the Claims Court, and also set forth clear standards regarding § 1500 and timing issues.

Therefore, we hold today that in accordance with the words, meaning, and intent of section 1500: 1) if the same claim is pending in another court at the time the complaint is filed in the Claims Court, the Claims Court has no jurisdiction, regardless of when an objection is raised or acted on; 2) if the same claim is filed in another court after the complaint is filed in the Claims Court, the Claims Court is by that action divested of jurisdiction, regardless of when the court memorializes the fact by

order of dismissal; and 3) if the same claim has been finally disposed of by another court before the complaint is filed in the Claims Court, ordinary rules of res judicata and available defenses apply.

*UNR III*, 962 F.2d at 1021.

Thereafter, the United States Supreme Court in 1993 made clear that the Federal Circuit was correct in its interpretation of § 1500. In *Keene Corp. v. United States*, 508 U.S. 200, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993) (*"Keene III"*), the Supreme Court affirmed *UNR III*, and illuminated § 1500's preclusive effect on similar claims filed before or simultaneously with those in the Court of Federal Claims.[13]

In short, *UNR III* and its progeny have been in effect in the Federal Circuit at least since 1992. The claim in this court in front of Judge Hodges was filed a decade later on December 3, 2002. A modicum of reasonable diligence would have revealed 28 U.S.C. § 1500 precluded plaintiff's December 3, 2002 claim in this court while her petition for review was pending in the Ninth Circuit.[14] The declaration sworn to by plaintiff's counsel which accompanied plaintiff's motion for voluntary dismissal of the complaint admits as much. Pl.'s Mot. to Susp. Proceedings and Decl. at 1–2, para. 2 ("Holloway has a jurisdictional problem created solely by the actions of the 9th Circuit Court of Appeals ....").

Counsel's reliance on *Conn. Dept. of Children & Youth Servs. v. United States*, 16 Cl.Ct. 102 (1989), is likewise misplaced. In this case, the plaintiff filed a claim in the U.S. District Court for the District of Columbia seeking a review of the Department of Health and Humans Services Grant Appeals Board's determination that the plaintiff was ineligible to receive various grant funds. *Conn. Dept. of Children & Youth Servs.*, 16 Cl.Ct. at 102. Six days after filing the district court complaint, the plaintiff filed a "virtually identical" complaint in the Claims Court making the same allegation and requesting the same relief. *Id.* The government, pursuant to § 1500, moved to dismiss (with prejudice) the plaintiff's complaint. In response to the government's motion, the plaintiff asked the court to stay the proceedings until the conclusion of the district court case. *Id.*

The then-Claims Court, citing § 1500, declined to enter a stay in the plaintiff's case. The court found that the plaintiff's claims in both the district court and its court were identical in their facts and requested relief. *Id.* at 105. The express terms of § 1500 preclude jurisdiction in the court in these instances, and left the court with no authority to grant the plaintiff's motion for a stay. *Id.* The court, however, did not leave the plaintiff without hope. The court dismissed the plaintiff's claim without prejudice and with "the unfettered right to return the claim to the docket of the court *nunc pro tunc* ... should the district court determine that is without jurisdiction over that claim." *Id.* at 106. Recognizing the plaintiff's concern over future filings and the statute of limitations, the court issued the following comments:

> The court notes however from the record before it that plaintiff has perhaps until 1994 to reinstitute its complaint here and cannot believe that the federal district

---

**13.** The Supreme Court limited its holding to this scenario and did "not decide whether [§ 1500] also continues to bar a plaintiff from prosecuting a claim in the Court of Federal Claims while he has pending a later-filed suit in another court ...." *Id.* at 209 n. 4, 113 S.Ct. 2035 (citations omitted). This issue—not relevant to the case at bar—was finally resolved by the Federal Circuit in *Hardwick Bros. Co. II v. United States*, 72 F.3d 883 (Fed.Cir.1995), which held that the Court of Federal Claims can "keep jurisdiction if suit was filed there first ...." *Hardwick Bros. Co. II*, 72 F.3d at 886; *see also Breneman*, 57 Fed.Cl. at 576–77 (2003) (quoting *Spodek v. United States*, 44 Fed.Cl. 32, 41 (1999) ("[t]he sum of these cases leads us to conclude that the same action filed in district court prior to being filed in the Court of Federal Claims divests the latter of jurisdiction, as do actions filed simultaneously, but actions filed in district court subsequent to the Court of Federal Claims filing are not considered 'pending' in the language of Section 1500, and thus do not divest this court of jurisdiction.") (internal quotation marks omitted)).

**14.** Lamentably, when confronted with these facts at oral argument, counsel acknowledged: "I *have not looked at the UNR case. I don't know what is says. I rely on my law clerks to provide me with the information.*" Tr. of Oral Arg. at 10:1–6.

court will not have ruled on the issue of its jurisdiction within that period of time, especially if this Opinion is brought to the attention of the district court.

*Id.*

Plaintiff's counsel contends this case stands for the proposition that whenever § 1500 prevents this court from asserting jurisdiction, it can traverse the barrier merely by dismissing the plaintiff's claim with the right to return *nunc pro tunc.* In other words, to counsel *Conn. Dept. of Children & Youth Servs.* stands for the proposition that § 1500 is a potential *solution* to statute of limitations problems rather than a *bar* which places a condition to this court's jurisdiction. Again, this court vehemently disagrees.

First of all, and clearly most important, it is doubtful whether plaintiff's novel interpretation of *Conn. Dept. of Children & Youth Servs.* survives *UNR III* and the Supreme Court's holding in *Keene III.* But, furthermore, even his reading of that case is faulty. For while the court in *Conn. Dept. of Children & Youth Servs.* expressed its concern over the plaintiff running afoul of the statute of limitations, it did not use the *nunc pro tunc* device as an escape valve. Indeed, the court clearly recognized that at the time of filing it did not have jurisdiction, but may have jurisdiction at a future time *within the statute of limitations.* In the words of the court,

> Should the federal district court, however, lose its hold on the pending matter, finding it has no jurisdiction over the refund claim, section 1500 would no longer apply and this court would then be freed from the jurisdictional bonds that preclude action at this time.
>
> Then, *and should the limitations period not have passed,* this court should properly take and adjudicate the relevant issues. (Citation omitted).

*Id.* at 105 (emphasis added).

As a matter of clarity, *nunc pro tunc* is a Latin term meaning "now for then," and describes "the inherent power of [a] court to make its records speak the truth, i.e., to correct [the] record at [a] later date to reflect what actually occurred at trial." BLACK'S LAW DICTIONARY 1097 (7th ed.1999). It is beyond cavil that a court may enter an order *nunc pro tunc* "to make the record speak the truth but it cannot supply an order which in fact was not previously made." *Matos v. Sec'y of Dep't of Health and Human Services,* 35 F.3d 1549, 1552 (Fed.Cir.1994) (*citing Crosby v. Mills,* 413 F.2d 1273, 1277 (10th Cir.1969) (internal quotations omitted); *In re Mother Tucker's Food Experience (Canada),* 925 F.2d 1402, 1404–05 (Fed.Cir. 1991) (failure to comply with statutory requirements is not curable *nunc pro tunc* )).

This court is not presently asked to deem the August 4, 2003 complaint *nunc pro tunc* in order to correct the record to reflect actuality. Rather the court is now requested to alter the history of this case in order to reflect something that *never existed*—this court's jurisdiction. Accordingly, because the present complaint does not and cannot "relate back" to the December 3, 2002 complaint, a case which even plaintiff's counsel admits this court was at that time without jurisdiction to entertain, the current action must be barred as untimely. Sadly, diligence could have avoided this.

## IV. Conclusion

For the foregoing reasons, this court GRANTS the government's motion to dismiss for lack of jurisdiction. The Clerk of the Court shall enter judgment on behalf of the United States, assess court costs against plaintiff, and, additionally, mail a copy of this Opinion and Order by U.S. Certified Mail to plaintiff at her residence.

**IT IS SO ORDERED.**