240 F.3d 1358 (Fed. Cir. 2001)
 FRANCONIA ASSOCIATES, DAVID HODGES, SR. C/O HODGES DEVELOPMENT CORP, JOANNE M. HODGES, R.C. GETTY APARTMENTS, R.C. MO APARTMENTS, R.C. PIERRE APARTMENTS, R.C. SPRINGS APARTMENTS, SCENIC VALLEY ASSOCIATES, VALLEY ASSOCIATES, DUBLIN PLAZA, INC., EVERGREEN MANOR ASSOCIATES, FOX RIDGE PHASE II, MARILYN GRAHAM, GREENWAY OF ALTOONA ASSOCIATES, PHASE I, GREENWAY OF NEWTON ASSOCIATES, PHASE I, PHOEBE J. PERRI, PINE NEEDLES APARTMENTS, PRAIRIE VILLAGE OF ALTOONA ASSOCIATES, PRAIRIE VILLAGE OF GRIMES ASSOCIATES, PRAIRIE VILLAGE OF HUXLEY ASSOCIATES, PRAIRIE VILLAGE OF LAPORTE CITY ASSOCIATES, PRAIRIE VILLAGE OF SLATER ASSOCIATES, PRAIRIE VILLAGE OF STATE CENTER ASSOCIATES, TIMBERBROOK PROPERTIES and BRIAN E. WELLS, Plaintiffs-Appellants,
v.
UNITED STATES, Defendant-Appellee.
 99-5123
 United States Court of Appeals for the Federal Circuit
 DECIDED: February 15, 2001
 
 Appealed from: United States Court of Federal Claims Senior Judge Reginald W. GibsonJeff H. Eckland, Faegre & Benson LLP, of Minneapolis, Minnesota, argued for plaintiffs-appellants. With him on the brief were John F. Beukema, William L. Roberts, and Mark J. Blando.
 Mark L. Josephs, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief was David M. Cohen, Director.
 Before MAYER, Chief Judge, NEWMAN, and SCHALL, Circuit Judges.
 SCHALL, Circuit Judge.
 
 
 1
 Appellants are owners of low income rental housing units financed by mortgage loans from the Farmers Home Administration of the United States Department of Agriculture ("FmHA").[1] The loans were made pursuant to section 515 of the National Housing Act of 1949, Pub. L. No. 87-723, § 4(b), 76 Stat. 671 (1962) (codified as amended at 42 U.S.C. § 1485 (1994)) ("National Housing Act"), and provided funding for low income housing in rural areas. In exchange for a low interest mortgage loan, each of the appellants agreed to restrictions on the use of the property that was subject to the mortgage and on the investment return that could be enjoyed from the property. However, under their original agreements with FmHA, appellants had the option of prepaying their loans at any time, thereby ending the restrictions.
 
 
 2
 In 1988 and 1992, respectively, Congress enacted the Emergency Low Income Housing Preservation Act of 1987, Pub. L. No. 100-242, 101 Stat. 1877 (1988) (codified as amended in relevant part at 42 U.S.C. § 1472(c) (1988)) ("ELIHPA"), and the Housing and Community Development Act of 1992, Pub. L. No. 102-550, 106 Stat. 3681, 3841 (1992) (codified as amended in relevant part at 42 U.S.C. § 1472(c) (1994)) (the "1992 legislation"). On May 30, 1997, appellants filed suit in the United States Court of Federal Claims. In their complaint appellants alleged that, by restricting their ability to prepay their FmHA loans, ELIHPA and the 1992 legislation had constituted a breach of their contracts with FmHA and had amounted to a taking of their property, in violation of the Fifth Amendment to the Constitution.
 
 
 3
 The government moved to dismiss appellants' breach of contract claims for lack of jurisdiction, asserting that the claims had accrued more than six years prior to the date the suit was filed and therefore were barred by the six year statute of limitations set forth in 28 U.S.C. § 2501 (1994). The Court of Federal Claims agreed and dismissed appellants' breach of contract claims. It also sua sponte dismissed their takings claims. Appellants appeal the dismissal of their suit. Because we conclude that appellants' causes of action accrued in 1988 when ELIHPA was enacted, which was more than six years before appellants filed suit, we affirm the Court of Federal Claims' dismissal of their action.
 
 BACKGROUND
 I.
 
 4
 Appellants' loans had terms of up to 50 years. In exchange for their loans, appellants promised to accept only eligible persons as tenants at their properties, to charge rents no higher than those permitted by FmHA regulations, to restrict the returns on their initial capital contributions, and to maintain certain cash reserves. Appellants all entered into loan agreements with FmHA prior to December 21, 1979.[2]
 
 
 5
 Under the section 515 program, in addition to a loan agreement, each borrower's contract with FmHA was based upon a promissory note and a real estate mortgage. The note and mortgage were expressly referenced in the loan agreement. The note included an "escape hatch," whereby the owner could convert the property to market-rate housing if the loan evidenced by the note was paid in full. Thus, each promissory note contained the following provision: "Prepayments of scheduled installments, or any portion thereof, may be made at any time at the option of the Borrower." This provision made it possible for appellants to prepay their loans at any time and then convert their property from low income to more profitable market-rate housing without first obtaining the permission of FmHA.
 
 
 6
 By the late 1970's many property owners had begun to exercise their prepayment options, thereby reducing the amount of available section 515 housing. In response, Congress passed the Housing and Community Development Amendments of 1979, Pub. L. No. 96-153, § 503, 93 Stat.1134 (1979) (codified as amended in relevant part at 42 U.S.C. § 1472 (1982)) (the "1979 legislation"). The 1979 legislation, which amended the National Housing Act, prohibited FmHA from accepting prepayment of any section 515 loan made before or after the date of enactment of the statute unless the owner agreed to maintain the low income status of the housing for at least 15 years from the date of the loan. FmHA could waive this requirement only if it determined that the need for low income housing in the relevant area was satisfied.
 
 
 7
 Reaction to the 1979 legislation, however, persuaded Congress to further amend the National Housing Act in 1980 to eliminate the retroactive application of the 1979 legislation. The Housing and Community Development Act of 1980, Pub. L. No. 96-399, § 514, 94 Stat. 1671 (1980) (codified as amended in relevant part at 42 U.S.C. §1472 (1994)), restored to pre-1979 section 515 borrowers, such as appellants, the right to prepay their mortgage loans at any time. The statute left the 1979 legislation's restrictions in place for loan transactions arising after the 1979 legislation.
 
 
 8
 Six years later, the continued short supply of low income housing prompted Congress to act again. Starting in October of 1986 and continuing through 1988, it enacted a series of moratoriums on loan prepayments. See H.R. Rep. No. 100-122(I) at 55 (1987), reprinted in 1987 U.S.C.C.A.N. 3317, 3369. Before the last moratorium expired, Congress passed ELIHPA, which was enacted February 5, 1988, to amend the National Housing Act to permanently maintain a steady supply of low income housing. ELIHPA contained multiple provisions affecting different programs that supplied low income housing to the public. Only Subtitle C of Title II, "Rural Rental Housing Displacement Prevention," pertains to appellants. § 241, 101 Stat. 1886-90. The other provisions of Title II deal with changes to Department of Housing and Urban Development ("HUD")-insured housing and other measures to preserve low income housing. Subtitle C imposes restrictions on prepayments of section 515 mortgages that originated before December 21, 1979. One restriction, codified in 42 U.S.C.§ 1472(c)(4)(A) (1988), requires that before FmHA can accept a prepayment, it must "make reasonable efforts to enter into an agreement with the borrower under which the borrower will make a binding commitment to extend the low income use of the assisted housing and related facilities for not less than the 20-year period beginning on the date on which the agreement is executed." If, after this "reasonable period," no agreement has been entered into, FmHA must require the owner to sell the housing to a nonprofit organization or public agency for a fair market value. 42 U.S.C. § 1472(c)(5)(A)(i) (1988). Only if no offer to buy is made within 180 days may FmHA accept prepayment. 42 U.S.C. § 1472(c)(5)(A)(ii) (1988). ELIHPA placed "those owners of projects placed in service prior to 1979 on the same playing field as those post-1979 projects who are required by law to keep their units low-income for 20 years." H.R. Rep. No. 100-122(I) at 55, reprinted in 1987 U.S.C.C.A.N at 3371. The portion of ELIHPA that governed HUD-insured loans was temporary, with an express two year time limit. § 203, 101 Stat. 1878 ("Effective upon the expiration of the 2-year period beginning on the date of enactment of this Act - (1) subtitles B and D [dealing with HUD-insured loans] are repealed; and (2) each provision of law amended by subtitle B or D is amended to read as it would without such amendment.").
 
 
 9
 Four years after ELIHPA, Congress passed the 1992 legislation. This legislation amended the National Housing Act to apply the prepayment restrictions of ELIHPA to section 515 loans made after December 21, 1979. 42 U.S.C. § 1472(c)(4)(A) (1994).
 
 II.
 
 10
 As noted above, appellants filed suit in the Court of Federal Claims on May 30, 1997. In Count One of their complaint, they asserted that the 1992 legislation "anticipatorily repudiated the contract between the defendant and each of the plaintiffs." According to appellants, the government's anticipatory repudiation had deprived, and would deprive, appellants of their right to prepay and terminate their loans at will. In Count Two of the complaint, appellants alleged that the repudiation of this contract right had amounted to a taking under the Fifth Amendment, for which they sought compensation.
 
 
 11
 In due course, the government moved to dismiss claims that involved pre-1979 loans, on the grounds that the statute of limitations had run as to those claims. The government maintained that it was ELIHPA that had affected the rights of the pre-1979 borrowers, not the 1992 legislation. The government argued that when the 1988 legislation was enacted, no other event needed to occur in order for the pre-1979 owners to bring suit. The 1992 legislation, according to the government, did nothing to alter the contracts of the pre-1979 borrowers.
 
 
 12
 Appellants countered with a motion for summary judgment on their breach of contract claims, asking the court to rule that the 1992 legislation constituted an anticipatory repudiation of the prepayment option, a material term of the loan contracts. Because the government's performance obligation under the contracts was to accept prepayment upon request by a borrower, appellants argued, the legislation was a repudiation by the government, a statement that it would not perform its future contractual obligations. According to appellants, under the doctrine of anticipatory repudiation the statute of limitations did not begin to run with the repudiation. Rather, appellants contended, they were entitled to defer suit until performance under their contracts was due or until they elected to treat the repudiation as a breach, neither of which, they argued, occurred in 1988.
 
 
 13
 The Court of Federal Claims granted the government's motion. In doing so, it held that appellants' breach of contract claims accrued upon the effective date of the regulations implementing ELIHPA, May 23, 1988. Franconia Assoc. v. United States, 43 Fed. Cl. 702, 709 (1999). Because appellants did not file suit until May of 1997, the court determined that their claims were barred by the six year statute of limitations set forth in 28 U.S.C. § 2501. The court accepted the government's contention that ELIHPA alone affected the pre-1979 borrowers' contractual rights, rejecting the notion that, as far as appellants were concerned, it was only a temporary measure.
 
 
 14
 The court rejected appellants' anticipatory repudiation argument because it concluded that the 1988 legislation constituted an actual breach, not merely a repudiation, of the loan contracts. The court reasoned that the government's obligation under the contracts was not to accept prepayment upon request, but rather to allow the borrowers to prepay at any time. Under this reading of the contracts, once the government permanently prohibited prepayment through ELIHPA, no action on the part of the appellants was necessary for a breach of contract claim to accrue, the court determined.
 
 
 15
 Finally, although the government did not seek dismissal of appellants' takings claims in Count Two of the complaint, the court sua sponte held that those claims too were barred by the six year statute of limitations. The court applied the same reasoning as it had applied to the breach of contract claims and found that the takings claims accrued on the effective date of the regulations implementing ELIHPA, May 23, 1988. This appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3) (1994).
 
 DISCUSSION
 I.
 
 16
 A suit against the government in the Court of Federal Claims is barred as untimely "unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501 (1994). The six year statute of limitations acts as an "express limitation on the Tucker Act's waiver of sovereign immunity." Hart v. United States, 910 F.2d 815, 817 (Fed. Cir. 1998). For purposes of the statute of limitations, a cause of action against the United States accrues "when all events have occurred which fix the government's liability." Kinsey v. United States, 852 F.2d 556, 557 (Fed. Cir. 1988) (quoting Oceanic Steamship Co. v. United States, 165 Ct. Cl. 217, 225 (1964)) (determining liability in a breach of contract claim); see also Seldovia Native Ass'n, Inc. v. United States, 144 F.3d 769, 774 (Fed. Cir. 1998) (determining liability in a takings claim).
 
 
 17
 In challenging the dismissal of their complaint, appellants make three arguments. First, they contend that the Court of Federal Claims erred because their causes of action did not accrue upon enactment of the 1988 statute. Rather, appellants assert, each borrower's cause of action could accrue only on the date on which FmHA refused a prepayment by the borrower, and ELIHPA did not constitute such a refusal. Appellants' first argument on appeal is premised upon the proposition that FmHA's obligation under the loan contracts was to accept prepayment rather than allow prepayment, an obligation that could only be triggered by an attempt to prepay. Appellants argue that, under these circumstances, ELIHPA only amounted to an anticipatory repudiation of the government's obligation with respect to prepayment of the loan contracts. Consequently, each borrower had the option of either bringing suit based upon ELIHPA or of waiting until FmHA refused a prepayment request. Appellants' second argument is that even if the government's obligation under the loan contracts was to allow prepayment, it was not ELIHPA, but rather the 1992 legislation that breached that obligation, the reason being that the restrictions on prepayment contained in ELIHPA were only temporary. Third, appellants contend that the Court of Federal Claims erred in holding that their takings claims accrued at the same time as their breach of contract claims.
 
 
 18
 We are not persuaded by appellants' arguments; we hold that appellants' breach of contract and takings claims both accrued when ELIHPA was enacted on February 5, 1988. Therefore, the claims are time barred because suit was not brought until more than six years later, in May of 1997. We consider first appellants' breach of contract claims.
 
 II.
 
 19
 A claim against the United States first accrues when the government's liability is determined. See Kinsey, 852 F.2d at 557. To determine whether, at some point, the government's liability with respect to appellants' breach of contract claims became "fixed," we first must determine the precise nature of FmHA's obligation under its loan contracts with appellants. As noted above, the contract provision that gave each appellant the right to prepay its loan from FmHA was contained in the promissory note evidencing the appellant's indebtedness: "Prepayments of scheduled installments, or any portion thereof, may be made at any time at the option of the Borrower." This provision gave appellants an unfettered right to prepay their loans at any time. In addition, the note's prepayment provision did not require any performance on the part of the government because it constituted an unconditional promise on the part of FmHA to allow borrowers to prepay their loans, an obligation which extended for the life of the loan. Thus, under the original terms of the various loan contracts, appellants were allowed to prepay their indebtedness at any time. "[A] breach of contract is a failure to perform a contractual duty when it is due." Trauma Serv. Group v. United States, 104 F.3d 1321, 1325 (Fed. Cir. 1997). FmHA's contractual duty in this case was to continue to allow borrowers the unfettered right to prepay their loans at any time. If that continuing duty was breached, the breach occurred immediately upon enactment of ELIPHA because, by its terms, ELIPHA took away the borrowers' unfettered right of prepayment. We thus reject appellants' argument that their breach of contract claims could not accrue until they sought to prepay their loans.
 
 
 20
 Appellants are not aided by their anticipatory repudiation argument. "An anticipatory repudiation occurs when an obligor communicates to an obligee that he will commit a breach in the future. . . . In such a situation, the normal rule is that the statute of limitations begins to run from the date of performance specified in the contract unless the obligee elects to sue earlier for anticipatory repudiation." Kinsey, 852 F.2d at 558. In other words, if the enactment of ELIHPA was not a breach, but simply an act of anticipatory repudiation, then appellants' claims did not accrue until some subsequent action by the government brought about an actual breach, although appellants had the right to bring suit immediately upon the government's repudiation of its obligation under the loan contracts. The doctrine of anticipatory repudiation does not apply in this case, however, because, the enactment of ELIHPA constituted an alleged breach, rather than just a repudiation, of the obligation to allow prepayment of the FmHA loans at any time. The government contracted to allow borrowers the unfettered right to prepay their loans and breached that promise, if at all, through the enactment of ELIHPA. The statute of limitations began to run at the time of breach, when ELIHPA was enacted on February 5, 1988.
 
 
 21
 Our holding today is consistent with our decision in Alder Terrace v. United States, 161 F.3d 1372 (Fed. Cir. 1998). The plaintiff in Alder Terrace entered into a contract with HUD to construct a housing project named "Alder Terrace." The contract was pursuant to section 221(d)(3) of the National Housing Act. 12 U.S.C. §§a1715l(d)(3), 1715z-1. To finance the project, the plaintiff incurred indebtedness to a private lender that was represented by a promissory note, the repayment of which was insured by HUD. The note generally provided that it could not be prepaid prior to its final maturity date without the approval of HUD. However an additional provision of the note gave the plaintiff the right to prepay its indebtedness without HUD's approval anytime after 20 years from the date on which HUD finally endorsed the note for purposes of insurance. HUD endorsed the plaintiff's note on January 5, 1969. Thus, the plaintiff was entitled to prepay the note anytime after January 5, 1989.
 
 
 22
 On August 13, 1996, the plaintiff filed suit in the Court of Federal Claims. In its action it alleged that provisions of ELIHPA that placed restrictions on its ability to prepay its indebtedness breached its prior agreement entitling it to prepay its HUD-insured loan after 20 years. Alternatively, the plaintiff claimed that the enactment of ELIHPA constituted a taking of its property, entitling it to compensation under the Takings Clause of the Fifth Amendment. The Court of Federal Claims dismissed the complaint for lack of jurisdiction on the ground that the plaintiff's action was barred by the six-year statute of limitations. On appeal, we affirmed. Starting from the premise that the plaintiff's suit was barred unless its cause of action accrued after August 13, 1990, we held that the suit was barred because both the date of ELIHPA's enactment (February 5, 1988) and the twenty-year prepayment date (January 5, 1989), the first date upon which the plaintiff was prevented from prepaying, occurred prior to August 13, 1990. We held that the claim accrued at the later of 20 years from contract origination or the enactment of ELIHPA. Id. at 1377. In other words, ELIHPA constituted a breach of contract by the government only if the plaintiff had an unfettered prepayment right when ELIHPA was enacted. Similarly, in this case appellants' claims accrued at the later of when appellants were eligible to prepay or the enactment of ELIHPA. Here, appellants had unrestricted prepayment rights from the dates of their loans. Thus, the enactment of ELIHPA was the only event that prevented appellants from exercising their express contractual rights to prepay. See also Adriadne Fin. Serv. v. United States, 133 F.3d 874, 879 (Fed. Cir. 1998) ("The government's liability was fixed when it refused to allow use of the asset it promised.").[3]
 
 III.
 
 23
 Appellants' alternative argument that it was the 1992 legislation, rather than ELIHPA, that caused their breach of contract claims to accrue is unavailing. As discussed above, the government's alleged breach occurred when ELIPHA prohibited FmHA from allowing prepayments. In other words, the government breached its duty to appellants, if at all, with the passing of ELIHPA in 1988. Appellants argue, however, that language in the statute prohibits the 1988 legislation from serving as the date of breach because the elimination of prepayment rights was only temporary. In the findings and purpose section of ELIHPA, Congress stated that "interim measures are needed to avoid the irreplaceable loss of low income housing and irrevocable displacement of current tenants." Pub. L. No. 101-242, § 202, 101 Stat. at 1878. However, while this language indicates that parts of ELIHPA were "interim measures," the section relating to FmHA loans was wholly permanent. In contrast, the restriction on HUD-insured mortgage prepayments did have a "sunset provision" pursuant to which the terms of ELIHPA applicable to HUD-insured loans were to expire after two years. Pub. L. No. 101-242, § 203, 101 Stat. at 1878. There is no similar language to indicate that the restrictions on FmHA loan prepayments were anything but permanent as to pre-1979 borrowers.[4]
 
 IV.
 
 24
 Finally, appellants argue that, even in the absence of anticipatory repudiation on the part of the government, they still have a valid takings claim. They contend that the application of the statute of limitations to a takings claim requires an analysis of evidence specific to each claim. According to appellants, in this case, a takings claim only becomes ripe for an individual owner when he either has offered to prepay his mortgage loan and his offer has been rejected, or when he shows that such an attempt would be futile. Appellants contend that because the court did not analyze evidence specific to each claim, the court erred in dismissing all of the appellants' takings claims. We disagree. The Fifth Amendment of the United States Constitution ensures that the government cannot appropriate private property for public use without just compensation. The government's liability for a takings claim becomes fixed when the property at issue is taken. Seldovia, 144 F.3d at 774.
 
 
 25
 Contract rights are a form of property that may be appropriated by the government. United States Trust Co. of N.Y. v. N.J., 431 U.S. 1, 19 n.16 (1977); see also Greenbrier v. United States, 193 F.3d 1348, 1356 (Fed. Cir. 1999). Thus, each appellant's contract prepayment right can be property for Fifth Amendment purposes. The appellants' unfettered right to prepay their FmHA loans at any time was eliminated by the government with the passage of ELIHPA because ELIHPA prohibited FmHA from allowing unrestricted prepayments. The statute thus took away and conclusively abolished a material contract right. Because appellants brought this suit in May of 1997, more than six years after ELIHPA effected an appropriation of their contract right, their takings claims are barred by the statute of limitations.
 
 CONCLUSION
 
 26
 For the foregoing reasons, the decision of the Court of Federal Claims is
 
 
 27
 AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 The agency formerly known as the Farmers Home Administration has undergone several name changes, and is now known as the Rural Housing Service. As used herein, the term "FmHA" includes the Farmers Home Administration and its successor agencies.
 
 
 [2]
 Some of the plaintiffs before the Court of Federal Claims entered into loan agreements after December 21, 1979. Those claims remain before that court. Only the pre-December 21, 1979 contracts are at issue in this appeal.
 
 
 [3]
 The Court of Federal Claims held that the government breached its obligation, if at all, on May 23, 1988, the effective date of regulations implementing ELIHPA. However, we find that any breach would have occurred earlier, with the enactment of ELIHPA on February 5, 1988. The statutory command of ELIHPA, not its regulations, eliminated the allowance of prepayments. See Alder Terrace, 161 F.3d at 1378 ("The fact that the final regulations had not yet been promulgated in no sense lessened the restrictions on the Developer's prepayment right.").
 
 
 [4]
 The 1992 legislation impacted only post-December 21, 1979 borrowers. The legislation required that the language of ELIPHA be modified to strike the words "before December 21, 1979," and substitute "prior to the date of enactment of the Department of Housing and Urban Development Reform Act of 1989." Pub. L. No. 102-550, § 712, 106 Stat. at 3841. This amendment only affected borrowers whose loan contracts were made after December 21, 1979, and before passage of the Reform Act of 1989. The 1992 legislation made those loan contracts subject to the same requirements of ELIPHA as the pre-December 21, 1979 loan contracts.