Carl W. LANDERS, Plaintiff,

v.

UNITED STATES, Defendant.

No. 06–314C.

United States Court of Federal Claims.

Nov. 20, 2006.

Carl W. Landers, Kaufman, Texas, pro se.

Kenneth S. Kessler, Trial Attorney; David M. Cohen, Director; Peter D. Keisler, Assis-

tant Attorney General, Civil Division, United States Department of Justice, Washington, DC, for the defendant.

## OPINION

HORN, Judge.

This matter comes before the court on the government's motion to dismiss the complaint filed by plaintiff Carl Landers. Specifically, the government alleges that this court lacks jurisdiction pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC) because: 1) the statute of limitations on Mr. Landers' claims has expired pursuant to 28 U.S.C. § 2501 (2000); 2) Mr. Landers' claims challenge a 1997 Final Decision of the Board of Veterans Appeals; and 3) Mr. Landers fails to state a claim upon which relief can be granted because the Settlement Agreement provided no representation or guarantee that Mr. Landers' receipt of the settlement would not impact his Veterans Administration (VA) compensation payments.

## FINDINGS OF FACT

Plaintiff Carl Landers served on active duty from December, 1979 to December, 1983 and again from July, 1984 to June, 1987. He was treated in a hospital operated by the Department of Veterans Affairs (VA). On September 30, 1992, Mr. Landers filed suit against the United States government under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671, et seq. (2000), in the United States District Court for the Southern District of California, alleging negligent medical care by the VA in the diagnosis and treatment of his Crohn's disease at a VA medical facility.

On March 9, 1994, the Assistant United States Attorney assigned to Mr. Landers' case sent a letter to Mr. Landers and his attorney, Bonita P. Martinez, to convey a structured settlement offer in the case. The letter offered Mr. Landers a lump sum payment of $70,000.00, along with monthly payments of $600.00 per month for life, guaranteed for 20 years, with an expected payout of $364,000.00. The letter stated that "[t]he monthly income (tax-free) of $600 ($7,200 per

year) when added to his [plaintiff's] Social Security and VA disability income brings Mr. Landers to an annual income level of almost $17,000." The letter also stated that with an " 'up front' cash payment of $70,000.00, he would end up with a substantial sum even after attorneys fees and costs have been deducted."

According to a letter from Mr. Landers to this court dated May 25, 2006, Mr. Landers' attorney in the District Court action told him that she was entitled to $70,000.00 to cover her attorney's fees. Mr. Landers claims that his attorney, therefore, proposed to the Office of the United States Attorney that the lump sum be increased to $90,000.00. In a March 15, 1994 letter, the Assistant United States Attorney agreed to increase the lump sum payment to $90,000.00.

In a June 7, 2006 letter to this court, Mr. Landers makes an unsubstantiated assertion that the Assistant United States Attorney had assured him that the monthly payment of $600.00 "was above and beyond [his] disability compensation." In the June 7, 2006 letter from Mr. Landers to the court, plaintiff also refers to his "current disability compensation." It is not clear from the record whether he was referring to disability benefits he was receiving at the time of the settlement, or that he anticipated receiving such benefits in the future.

On March 29, 1994, Mr. Landers, his attorney, and representatives of the government entered into a Compromise Settlement Agreement. In the Settlement Agreement, the government agreed to pay "Carl W. Landers and his attorney a sum not to exceed Ninety Thousand Dollars ($90,000) from which sum Plaintiff shall pay his attorneys fees and costs of suit." The check was to be made payable to Mr. Landers and his attorney. In addition, the Agreement stipulated that an annuity would be purchased from First Colony Life Insurance Company "that will result in the monthly payment of Six Hundred Dollars ($600.00) per month, commencing one month after funding of the settlement." These payments "shall be payable for life, and are guaranteed for a period of twenty years certain, and shall be payable regardless of survivorship." In a letter from

the VA General Counsel to Mr. Landers, it was explained that the Settlement Agreement provided that Mr. Landers would receive payments for life and that his estate would receive monthly payments from the government-purchased annuity for twenty years, even if Mr. Landers died during that time. Under the terms of the Agreement, plaintiff's attorney was to be paid no more than 25 percent of the final total cost of the settlement agreement. However, it appears from the record that the payment to plaintiff from the lump sum was only $20,000.00 and plaintiff's attorney, Ms. Martinez, received $70,000.00.[1]

In May, 1995, Mr. Landers received a rating decision from the VA to compensate him for a vascular necrosis of both hips resulting from steroid treatments administered at a VA medical facility. See 28 U.S.C. § 1151 (2000). According to plaintiff's complaint, in July, 1995, Mr. Landers received a letter from the VA stating that it had a right to recoup the full amount of $195,000.00 awarded in the earlier settlement with the government. Also, according to the complaint, in September, 1995, the VA began withholding money from Mr. Landers' VA compensation benefits. See 38 C.F.R. § 3.800(a)(2) (2006). The pertinent regulation, 38 C.F.R. § 3.800(a)(2) provides:

> Where any person is awarded a judgment on or after December 1, 1962, against the United States in a civil action brought pursuant to 28 U.S.C. 1346(b), or enters into a settlement or compromise on or after December 1, 1962, under 28 U.S.C. 2672 or 2677, by reason of a disability, aggravation or death within the purview of this section, no compensation or dependency and indemnity compensation shall be paid to such person for any month beginning after the date such judgment, settlement, or compromise on account of such disability, aggravation, or death becomes final until the total amount of benefits which would be paid except for this provision equals the total amount included in such judgment, settlement, or compromise. The provisions of this paragraph do not apply, however, to any portion of such compensation or dependency and indemnity compensation payable for any period preceding the end of the month in which such judgment, settlement or compromise becomes final.

38 C.F.R. § 3.800(a)(2).

Although the record does not contain much information on prior proceedings, initially plaintiff's case contesting the recoupment appears to have been heard in the San Diego Regional Office of the VA. In January, 1997, Mr. Landers unsuccessfully appealed a negative recoupment decision to the Board of Veterans Appeals. He was represented by an American Legion attorney. On November 20, 1997, the Board of Veterans Appeals denied plaintiff's appeal and rejected plaintiff's contention that the VA should not be allowed to recoup the full amount of the $195,000.00 settlement. The Board cited 38 U.S.C.A. § 1151 (West 1991) and 38 C.F.R. § 3.800(a)(2) (1996) in support of its decision. Mr. Landers subsequently sent a letter to the VA requesting a waiver of the recoup-

---

1. The FTCA limits attorney's fees to 25 percent of the total settlement amount. 28 U.S.C. § 2678 (2000). According to a letter dated June 18, 2004 from the Office of the General Counsel at the VA to the plaintiff, the settlement amount from which attorney's fees should have been calculated was $195,000.00. This amount should have been calculated by adding the annuity cost of $105,000.00 and the up-front payment of $90,000.00. According to this letter, because of the 25 percent statutory limitation on attorney's fees, the attorney's fees in plaintiff's case should not have exceeded $48,750.00. The General Counsel's letter also indicated that some of the lump sum payment was paid to Kaiser Permanente to satisfy a medical expense lien, with the rest going to plaintiff. In fact, in a filing with this court, Ms. Martinez admits that she received $70,000.00 and plaintiff received only $20,000.00 of the $90,000.00 lump sum payment. In a letter dated June 7, 2006 to this court, plaintiff suggested that his attorney had used the figure $280,000.00 from which to calculate her attorney fees. The Board of Veterans Appeals used $195,000.00 as the amount of the settlement check issued by the government to cover the cost of purchasing an annuity for plaintiff and to pay the lump sum amount due. In the decision issued by the Board of Veterans Appeals, regarding plaintiff's case, which is discussed below, the Board alluded to the possibility that plaintiff's attorney may have received excessive payments and that Mr. Landers might have further legal recourse against her. If Ms. Martinez overcharged plaintiff for her legal services, that is a matter between Mr. Landers and his attorney.

ment. The VA responded in a letter dated October 24, 2003 that the VA was unable to consider the request because the "recoupment cannot be waived," and referred plaintiff to the decision by the Board of Veterans Appeals.

On April 24, 2006, Mr. Landers, through his attorney, Bonita P. Martinez, who had represented him in his malpractice case, filed the complaint in this court alleging a continuing breach of contract by the government. The complaint asserts that the recoupment by the government in the amount of $195,000.00 violates the Settlement Agreement which resolved plaintiff's malpractice case and that plaintiff is entitled to benefit from the entire amount. On June 7, 2006, Mr. Landers was authorized to proceed *pro se* because his attorney had withdrawn from the case and, as Mr. Landers stated to the court, she had "dropped" him because "I cannot pay her up front money."

## DISCUSSION

The government contends that this court lacks subject matter jurisdiction over plaintiff's case pursuant to RCFC 12(b)(1) because Mr. Landers' claim accrued more than six years ago and, therefore, is barred by the applicable statute of limitations, 28 U.S.C. § 2501 (2000) and because the plaintiff's challenge to the recoupment was brought to and decided by the Board of Veterans Appeals, which this court is without jurisdiction to review. Defendant further seeks dismissal of plaintiff's complaint because Mr. Landers fails to state a claim upon which relief can be granted pursuant to RCFC 12(b)(6), given that the VA has completed its obligations under the Settlement Agreement.

Subject matter jurisdiction may be challenged at any time by the parties, by the court *sua sponte*, and even on appeal. *See Fanning, Phillips, Molnar v. West*, 160 F.3d 717, 720 (Fed.Cir.1998) (quoting *Booth v. United States*, 990 F.2d 617, 620 (Fed.Cir.), *reh'g denied* (1993)); *United States v. Newport News Shipbuilding and Dry Dock Co.*, 933 F.2d 996, 998 n. 1 (Fed.Cir.1991). "In fact, a court has a duty to inquire into its jurisdiction to hear and decide a case." *Special Devices, Inc. v. OEA, Inc.*, 269 F.3d

1340, 1342 (Fed.Cir.2001) (citing *Johannsen v. Pay Less Drug Stores Northwest, Inc.*, 918 F.2d 160, 161 (Fed.Cir.1990)); *see also View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 115 F.3d 962, 963 (Fed.Cir.1997) ("[C]ourts must always look to their jurisdiction, whether the parties raise the issue or not."). A plaintiff must establish jurisdiction by a preponderance of the evidence. *See Reynolds v. Army and Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed.Cir.1988); *Thomas v. United States*, 56 Fed.Cl. 112, 115 (2003); *Martinez v. United States*, 48 Fed.Cl. 851, 857 (2001), aff'd in part, 281 F.3d 1376 (Fed.Cir.), *reh'g denied* (2002); *Bowen v. United States*, 49 Fed.Cl. 673, 675 (2001), *aff'd*, 292 F.3d 1383 (Fed.Cir. 2002); *Vanalco, Inc. v. United States*, 48 Fed.Cl. 68, 73 (2000); *Alaska v. United States*, 32 Fed.Cl. 689, 695 (1995), *appeal dismissed*, 86 F.3d 1178 (Fed.Cir.1996) (table). When construing the pleadings pursuant to a motion to dismiss, the court should grant the motion only if "it appears beyond doubt that [the plaintiff] can prove no set of facts in support of [the] claim which would entitle [the plaintiff] to relief." *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 654, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999) (quoting *Conley v. Gibson*, 355 U.S. 41, 46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *Brubaker Amusement Co. v. United States*, 304 F.3d 1349, 1355 (Fed.Cir.2002), *cert. denied sub nom. Penn Triple S v. United States*, 538 U.S. 921, 123 S.Ct. 1570, 155 L.Ed.2d 311 (2003); *Leider v. United States*, 301 F.3d 1290, 1295 (Fed.Cir.), *reh'g and reh'g en banc denied* (2002), *cert. denied*, 538 U.S. 978, 123 S.Ct. 1786, 155 L.Ed.2d 666 (2003); *Conti v. United States*, 291 F.3d 1334, 1338 (Fed.Cir.), *reh'g en banc denied* (2002), *cert. denied*, 537 U.S. 1112, 123 S.Ct. 904, 154 L.Ed.2d 785 (2003); *Consol. Edison Co. v. O'Leary*, 117 F.3d 538, 542 (Fed.Cir.1997), *cert. denied sub nom. Consol. Edison Co. v. Pena*, 522 U.S. 1108, 118 S.Ct. 1036, 140 L.Ed.2d 103 (1998); *see also New Valley Corp. v. United States*, 119 F.3d 1576, 1579 (Fed.Cir.), *reh'g denied, and reh'g en banc declined* (1997); *Highland Falls–Fort Montgomery Cent. Sch. Dist. v. United States*, 48 F.3d 1166, 1169 (Fed.Cir.), *cert. denied*, 516 U.S. 820, 116 S.Ct. 80, 133 L.Ed.2d 38 (1995); *Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed.Cir.1989); *W.R.*

*Cooper Gen. Contractor, Inc. v. United States,* 843 F.2d 1362, 1364 (Fed.Cir.1988) ("When the facts alleged in the complaint reveal 'any possible basis on which the non-movant might prevail, the motion must be denied.' "); *RCS Enters., Inc. v. United States,* 46 Fed.Cl. 509, 513 (2000).

Pursuant to RCFC 8(a)(1) and Rule 8(a)(1) of the Federal Rules of Civil Procedure, a plaintiff need only state in the complaint "a short and plain statement of the grounds upon which the court's jurisdiction depends." RCFC 8(a)(1). However, "[d]etermination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." *Holley v. United States,* 124 F.3d 1462, 1465 (Fed.Cir.), *reh'g denied* (1997) (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)). Nevertheless, "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *Briscoe v. LaHue,* 663 F.2d 713, 723 (7th Cir.1981), *aff'd,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983); *Bradley v. Chiron Corp.,* 136 F.3d 1317, 1322 (Fed.Cir. 1998) ("Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim.").

When deciding a motion to dismiss based on a lack of subject matter jurisdiction, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Conley v. Gibson,* 355 U.S. at 45–46, 78 S.Ct. 99; *Boise Cascade Corp. v. United States,* 296 F.3d 1339, 1343 (Fed.Cir.2002), *cert. denied,* 538 U.S. 906, 123 S.Ct. 1484, 155 L.Ed.2d 226 (2003); *Pixton v. B & B Plastics, Inc.,* 291 F.3d 1324, 1326 (Fed.Cir.2002); *Commonwealth Edison Co. v. United States,* 271 F.3d 1327, 1338 (Fed.Cir.2001) (quoting *New Valley Corp. v. United States,* 119 F.3d at 1580), *cert. denied,* 535 U.S. 1096, 122 S.Ct. 2293, 152 L.Ed.2d 1051 (2002); *Boyle v. United States,* 200 F.3d 1369, 1372 (Fed.Cir. 2000); *Perez v. United States,* 156 F.3d 1366, 1370 (Fed.Cir.1998); *Highland Falls–Fort*

*Montgomery Cent. Sch. Dist. v. United States,* 48 F.3d at 1167 (citing *Gould, Inc. v. United States,* 935 F.2d 1271, 1274 (Fed.Cir. 1991)); *Henke v. United States,* 60 F.3d 795, 797 (Fed.Cir.1995); *Hamlet v. United States,* 873 F.2d at 1416; *Ho v. United States,* 49 Fed.Cl. 96, 100 (2001), *aff'd,* 30 Fed.Appx. 964 (Fed.Cir.2002); *Alaska v. United States,* 32 Fed.Cl. at 695. If a defendant or the court challenges jurisdiction or plaintiff's claim for relief, however, the plaintiff cannot rely merely on allegations in the complaint, but must instead bring forth relevant, competent proof to establish jurisdiction. *McNutt v. Gen. Motors Acceptance Corp. of Ind.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *see also Land v. Dollar,* 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); *Reynolds v. Army and Air Force Exch. Serv.,* 846 F.2d at 747; *Catellus Dev. Corp. v. United States,* 31 Fed.Cl. 399, 404–05 (1994).

In order for this court to have jurisdiction over a plaintiff's complaint, the Tucker Act requires that the plaintiff identify an independent substantive right enforceable against the United States for money damages. *See* 28 U.S.C. § 1491 (2000). The Tucker Act states:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1).

As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. *See United States v. Testan,* 424 U.S. 392, 400, 96 S.Ct. 948, 47 L.Ed.2d 114, *reh'g denied,* 425 U.S. 957, 96 S.Ct. 1736, 48 L.Ed.2d 202 (1976) (citing

*Eastport Steamship Corp. v. United States,* 178 Ct.Cl. 599, 605–06, 372 F.2d 1002, 1009 (1967)); *see also Palmer v. United States,* 168 F.3d at 1314; *Stinson, Lyons & Busta-mante, P.A. v. United States,* 33 Fed.Cl. 474, 478 (1995), *aff'd,* 79 F.3d 136 (Fed.Cir.1996). A waiver of traditional sovereign immunity cannot be implied but must be "unequivocally expressed." *INS v. St. Cyr,* 533 U.S. 289, 299 n. 10, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001); *United States v. Nordic Village, Inc.,* 503 U.S. 30, 33, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992); *Ins. Co. of the West v. United States,* 243 F.3d 1367, 1372 (Fed.Cir.), *reh'g and reh'g en banc denied* (2001); *Saraco v. United States,* 61 F.3d 863, 864 (Fed.Cir. 1995) (quoting *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969)), *cert. denied,* 517 U.S. 1166, 116 S.Ct. 1565, 134 L.Ed.2d 665 (1996).

The Tucker Act, however, merely confers jurisdiction on the United States Court of Federal Claims; " 'it does not create any substantive right enforceable against the United States for money damages.' " *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (quoting *United States v. Testan,* 424 U.S. at 398–99, 96 S.Ct. 948), *reh'g denied,* 446 U.S. 992, 100 S.Ct. 2979, 64 L.Ed.2d 849 (1980); *White Mountain Apache Tribe v. United States,* 249 F.3d 1364, 1372 (Fed.Cir.2001), *aff'd,* 537 U.S. 465, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003); *Cyprus Amax Coal Co. v. United States,* 205 F.3d 1369, 1373 (Fed.Cir.2000), *cert. denied,* 532 U.S. 1065, 121 S.Ct. 2214, 150 L.Ed.2d 208 (2001); *New York Life Ins. Co. v. United States,* 118 F.3d 1553, 1555–56 (Fed.Cir. 1997), cert. *denied,* 523 U.S. 1094, 118 S.Ct. 1559, 140 L.Ed.2d 792 (1998); *United States v. Connolly,* 716 F.2d 882, 885 (Fed.Cir.1983) (en banc), *cert. denied,* 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984). Individual claimants, therefore, must look beyond the jurisdictional statute for a waiver of sovereign immunity. *United States v. Mitchell,* 445 U.S. at 538, 100 S.Ct. 1349. In order for a claim to be successful, the plaintiff "must also demonstrate that the source of law relied upon 'can fairly be interpreted as mandating compensation by the federal government for the damages sustained.' " *White Mountain Apache Tribe v. United States,*

249 F.3d at 1372 (quoting *United States v. Mitchell,* 463 U.S. 206, 216–17, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983)); *see also United States v. Testan,* 424 U.S. at 400, 96 S.Ct. 948; *Fisher v. United States,* 402 F.3d 1167, 1173–74 (Fed.Cir.2005) (en banc); *Tippett v. United States,* 185 F.3d 1250, 1254 (Fed.Cir. 1999) ("[T]he plaintiff must assert a claim under a separate money-mandating constitutional provision, statute, or regulation, the violation of which supports a claim for damages against the United States." (quoting *James v. Caldera,* 159 F.3d 573, 580 (Fed. Cir.1998), *reh'g denied* (1999))); *Doe v. United States,* 100 F.3d 1576, 1579 (Fed.Cir.1996), *reh'g and reh'g en banc denied* (1997); *Eastport Steamship Corp. v. United States,* 178 Ct.Cl. at 607, 372 F.2d at 1009.

In its Motion to Dismiss, the government contends that this court "should dismiss Mr. Landers' complaint for lack of jurisdiction, pursuant to 28 U.S.C. § 2501, because Mr. Landers' claim accrued more than six years ago." The statute at 28 U.S.C. § 2501 sets an express limitation on the jurisdiction granted to this court under the Tucker Act by requiring that "every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." *Martinez v. United States,* 333 F.3d 1295, 1304 n. 1 (Fed.Cir. 2003) (en banc) (internal quotations omitted), *cert. denied,* 540 U.S. 1177, 124 S.Ct. 1404, 158 L.Ed.2d 76 (2004); *Franconia Assocs. v. United States,* 240 F.3d 1358, 1362 (Fed.Cir. 2001), *rev'd on other grounds,* 536 U.S. 129, 122 S.Ct. 1993, 153 L.Ed.2d 132 (2002); *Alder Terrace, Inc. v. United States,* 161 F.3d 1372, 1376–77 (Fed.Cir.1998); *Brown Park Estates–Fairfield Dev. Co. v. United States,* 127 F.3d 1449, 1454 (Fed.Cir.1997); *Hart v. United States,* 910 F.2d 815, 817 (Fed.Cir. 1990) (citing *Soriano v. United States,* 352 U.S. 270, 273–74, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957)); *Holloway v. United States,* 60 Fed. Cl. 254, 256 (2004). The six-year time bar on actions against the United States is "jurisdictional, because filing within the six-year period was a condition of the waiver of sovereign immunity in the Tucker Act, 28 U.S.C. § 1491(a)(1)." *Caguas Cent. Fed. Sav. Bank*

*v. United States,* 215 F.3d 1304, 1310 (Fed. Cir.2000), *cert. denied,* 531 U.S. 1070, 121 S.Ct. 759, 148 L.Ed.2d 661 (2001); *see also Martinez v. United States,* 333 F.3d at 1316; *Block v. North Dakota,* 461 U.S. 273, 287, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983); *Frazer v. United States,* 288 F.3d 1347, 1351 (Fed.Cir. 2002); *Brown Park Estates–Fairfield Dev. Co. v. United States,* 127 F.3d at 1454; *Holloway v. United States,* 60 Fed.Cl. at 256. Because the statute of limitations affects this court's subject matter jurisdiction, the requirement is strictly construed, and may not be waived by the court. *Alder Terrace, Inc. v. United States,* 161 F.3d at 1376–77; *Holloway v. United States,* 60 Fed.Cl. at 256; *Martinez v. United States,* 48 Fed.Cl. at 857; *Entines v. United States,* 39 Fed.Cl. 673, 678 (1997), *aff'd,* 185 F.3d 881 (Fed.Cir.) (table), *cert. denied,* 526 U.S. 1117, 119 S.Ct. 1766, 143 L.Ed.2d 796 (1999); *McDonald v. United States,* 37 Fed.Cl. 110, 113 (1997), *aff'd,* 135 F.3d 778 (Fed.Cir.1998) (table).

The statute of limitations for a claim against the United States begins to run "when 'all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment. . . .' " *Martinez v. United States,* 333 F.3d at 1303 (quoting *Nager Elec. Co. v. United States,* 177 Ct.Cl. 234, 240, 368 F.2d 847, 851 (1966), *reh'g denied,* 184 Ct.Cl. 390, 396 F.2d 977 (1968)); *Franconia Assocs. v. United States,* 240 F.3d at 1362; *Alder Terrace, Inc. v. United States,* 161 F.3d at 1377; *Hopland Band of Pomo Indians v. United States,* 855 F.2d 1573, 1577 (Fed.Cir.1988); *Lins v. United States,* 231 Ct.Cl. 579, 582, 688 F.2d 784, 786 (1982), *cert. denied,* 459 U.S. 1147, 103 S.Ct. 788, 74 L.Ed.2d 995 (1983); *Oceanic Steamship Co. v. United States,* 165 Ct.Cl. 217, 225 (1964); *Holloway v. United States,* 60 Fed.Cl. at 256.

The Settlement Agreement in this case was signed on March 29, 1994. In his complaint, Mr. Landers attempts to avoid the application of the limitations period by asserting that the "Compromise Settlement Agreement imposed a continuing contractual duty on the DEFENDANT to make the payments as agreed." (capital letters in original). The government responds by arguing that there is no provision in the Settlement

Agreement that "imposed upon the Government a *continuing* obligation to do anything." (emphasis in original). Rather, the government argues that the monthly payments "resulted from the Government's *one-time* purchase of an annuity—and that annuity was purchased more than six years ago," in 1994. (emphasis in original). Moreover, the government suggests that "[a]t the *very* latest, the claim would have accrued in 1997 when the BVA [Board of Veterans Appeals] rejected Mr. Landers' arguments and held that the VA's deduction from his monthly benefits were appropriate and mandated by statute." (emphasis in original). Under either theory, plaintiff filed his complaint in this court well after the applicable six-year period expired.

 Under the theory of continuing breach, upon which Mr. Landers attempts to rely, the government would owe the plaintiff a continuing duty to make the monthly payments to him and a new cause of action would arise with each breach of that duty. *See Tabbee v. United States,* 30 Fed.Cl. 1, 5 (1993), *appeal dismissed,* 36 F.3d 1114 (Fed. Cir.1994). In order for there to be a breach under what also is referred to as the continuing claims doctrine, "the plaintiff's claim must be inherently susceptible to being broken down into a series of independent and distinct events or wrongs each having its own associated damages. . . . However a claim based upon a single distinct event, which may have continued ill effects later on, is not a continuing claim." *Brown Park Estates–Fairfield Dev. Co. v. United States,* 127 F.3d at 1456. A cause of action then accrues for each distinct wrong, "allowing the court to have jurisdiction for all claims accruing within the last six years, even if the first claim accrued more than six years before. . . ." *Davidson v. United States,* 66 Fed.Cl. 206, 209 (2005) (citing *Friedman v. United States,* 159 Ct.Cl. 1, 310 F.2d 381, 384–85 (1962)). In *Burich v. United States,* the United States Court of Claims indicated that the continuing claims doctrine can be applicable when compensation is due and payable periodically, in which case a claim accrues each time the government failed to pay the proper amount. *Burich v. United States,* 177 Ct.Cl. 139, 143, 366 F.2d 984, 986–87 (1966), *cert.*

*denied,* 389 U.S. 885, 88 S.Ct. 152, 19 L.Ed.2d 182, *reh'g denied,* 389 U.S. 998, 88 S.Ct. 486, 19 L.Ed.2d 504 (1967).

■ "However, the fact that a plaintiff receives monthly payments does not automatically entitle that plaintiff to assert the continuing claims doctrine." *Davidson v. United States,* 66 Fed.Cl. at 209 (citing *Brown Park Estates–Fairfield Dev. Co. v. United States,* 127 F.3d at 1457). "[T]he continuing claims doctrine does not apply to a claim based on a single distinct event which has ill effects that continue to accumulate over time." *Ariadne Fin. Servs. Pty. v. United States,* 133 F.3d 874, 879 (Fed.Cir. 1998). In *Davidson v. United States,* a widow claimed that the government had denied her full survivor benefit plan benefits. *Davidson v. United States,* 66 Fed.Cl. at 207. The plaintiff argued that the continuing claims doctrine applied because the government paid her monthly and as a result her claim for benefits accrued each month. *Id.* at 209–10. The court disagreed, finding that the continuing claims doctrine was inapplicable because all events necessary for the plaintiff to bring a claim occurred when her husband died. *Id.* Further, the court noted that the plaintiff could have brought a claim after her husband died or when the government recalculated her benefits, both of which were now beyond the statute of limitations. *Id.* at 209.

■ In the case currently before the court, Mr. Landers appears to base his claims on the government's recoupment of $195,000.00 awarded to him under the Settlement Agreement in his FTCA case. Mr. Landers alleges that he only became aware of the recoupment when the deductions began in September, 1995 and of the government's final position when the Board of Veterans Appeals affirmed that the government was entitled to recoup the entirety of Mr. Landers' settlement amount.

The Settlement Agreement at issue in this case was signed in 1994. After the Settlement Agreement was signed, the government completely fulfilled its obligations under the agreement by paying a total of $195,000.00 to purchase an annuity for the benefit of Mr. Landers and to make a $90,000.00 lump sum payment to plaintiff and his attorney. The payments plaintiff continues to receive as a result of the settlement in his FTCA case are not being paid by the government, pursuant to the Settlement Agreement, but rather flow from the annuity purchased to the benefit of Mr. Landers. There is no possibility that the continuing claims doctrine can apply for a breach of a settlement agreement, the terms of which, as is undisputed in the record, were fully complied with in 1994. The events on which plaintiff conceivably could have based a breach of contract claim were fixed when the contract terms were met by the government. Moreover, according to the record, plaintiff knew of the recoupment no later than 1995. Because the claims presented by Mr. Landers are barred by the applicable statute of limitations, this court does not have jurisdiction to review his claim.[2]

■ Although this court finds that Mr. Landers' claim is time barred, the allegations in his complaint also would not be appropriate for consideration by this court because the court is without jurisdiction to review a final determination by the Board of Veterans Appeals. Although Mr. Landers has characterized his claims as in the nature of a breach of contract, his complaint is in essence a challenge to the affirmation of the VA recoupment of the $195,000.00 awarded to him by the Settlement Agreement. The enforcement of the recoupment decision was challenged by Mr. Landers at the VA and a final decision was issued by the Board of Veterans Appeals. In essence, plaintiff's claim is not a breach of contract for failure to honor the Settlement Agreement; the government paid the full $195,000.00 as dictated by that Agreement. Rather, plaintiff's claim is a challenge to the VA's actions to recoup the $195,000.00 by deduction from VA, benefits payments made to the plaintiff as dictated by statute. *See* 38 U.S.C. § 1151(b) (2000).

---

**2.** Defendant also is correct that even if the court were to assume jurisdiction, which it does not, plaintiff's claim would have to be dismissed pursuant to RCFC 12(b)(6) for failure to state a claim upon which relief can be granted because the government's full compliance with the Settlement Agreement means that no breach of the agreement has occurred.

**676**

Although Mr. Landers alleges, albeit without valid evidentiary substantiation, that he was promised that he would receive the full $195,000.00, out of which he acknowledges he would have to pay some amount of attorney's fees, and apparently satisfy an outstanding lien, it is not possible to ignore the recoupment dictates of 38 U.S.C. § 1151(b), which require that the amount awarded in an FTCA judgment or settlement be recouped by the VA. Exclusive jurisdiction to review a final decision of the Board of Veterans Appeals is assigned by Congress to the United States Court of Appeals for Veteran's Claims, *see* 38 U.S.C. § 7252 (2000), and review of that decision is assigned to the United States Court of Appeals for the Federal Circuit. *See* 38 U.S.C. § 7292 (2000). In this case, plaintiff took his appeal only to the Board of Veterans Appeals, not to the Court of Appeals for Veteran's Claims or the Federal Circuit. Under the applicable statutes, those were the exclusive, appropriate jurisdictions to further review Mr. Landers' claims. The United States Court of Federal Claims is without jurisdiction to review decisions of the Board of Veterans Appeals, including the issue of VA recoupment. *See Carlisle v. United States,* 66 Fed.Cl. 627 (2005) (discussing the legality of recoupment and the appropriate jurisdiction for review as not in the Court of Federal Claims).

### CONCLUSION

The court has sympathy with Mr. Landers' medical condition and with some of his unfortunate dealings with the attorney he chose to represent him in the past, as well as initially in this court. Nonetheless, because this action is time barred and because this court is without jurisdiction to review decisions by the Board of Veterans Appeals, defendant's motion to dismiss is **GRANTED** and plaintiff's complaint is **DISMISSED,** with prejudice. Each party shall bear its own costs, attorney fees and expenses. The clerk's office shall enter **JUDGMENT** consistent with this order.

**IT IS SO ORDERED.**